# Louden, Administrator, *versus* Waddle *et al.*, Administrators.

1. A., having a dower interest in certain land, with the buildings thereon, and holding also a mortgage against the same premises, effected a policy of insurance against fire upon said buildings in the usual form, for an amount much greater than the amount of the mortgage. Subse-

[Louden *v.* Waddle.]

quently a loss occurred, and the insurance company thereupon paid to A. a large part of the sum for which she had insured the premises. In making proof of loss A. stated that the property belonged to her for herself and son in trust. Part of the money obtained from the company was employed by A. in erecting new buildings on the land, which were, however, of inferior value to the old ones. A. having afterwards died, her administrators issued a scire facias upon the mortgage on the premises above described, to which the defense was set up that A. had intended to cover by her policy of insurance her insurable interest in said premises as mortgagee, and that, as she had received more than the amount of the mortgage debt from the insurance company, the same was paid and the mortgage satisfied. *Held,* that the facts of the case did not warrant the conclusion that A. had intended to insure her interest as mortgagee as distinguished from the dower interest in the property, and that plaintiffs were therefore entitled to judgment.

*s.* Whether the insurance by a mortgagee of an interest in the premises intended to be for the amount of his debt is an insurance of that debt, and therefore in case of loss the receipt by him of that amount from the insurance company operates as a satisfaction of the mortgage, not decided, but the weight of opinion indicated to be in the negative.

June 2d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Lycoming county:* Of May Term 1881, No. 128.

Sci. fa. sur mortgage, by William G. Louden, administrator of Euphemia C. Louden, deceased, formerly Euphemia C. Sweeny, against Thomas Waddle and R. W. Sweeny, administrators of Charles W. Sweeny, deceased. J. G. Calvert, guardian of William Sweeny, minor child of the said Charles W. Sweeny, deceased, was afterwards permitted to become a party defendant. Pleas, payment, payment with leave, &c., and set off.

On the trial, the following facts appeared: Charles W. Sweeny died intestate in October 1869, leaving to survive him a widow, Euphemia C. Sweeny, and a minor son, William, of whom J. G. Calvert was appointed guardian after this suit was brought. His personal property proving insufficient to pay his debts, his administrators duly obtained an order of the Orphans' Court authorizing them to mortgage, for the payment of debts, certain real estate of which he died seized, consisting of a lot of ground with two dwelling-houses, barn and out-buildings thereon, in the occupancy and possession of his widow, Euphemia C. Sweeny. His administrators thereupon borrowed from his widow the sum of $2,613.93, for which amount they executed to her a mortgage on the said premises, dated June 3d 1872, duly recorded, payable in one year, with interest, being the mortgage in suit. No part of the principal or interest thereof was ever paid.

In 1874 Mrs. Euphemia C. Sweeny married William G. Louden.

In 1874 Mrs. Euphemia C. Sweeney married William G. Louden.

On August 14th 1876, Mrs. Euphemia C. Louden procured a policy of insurance in the Ætna Insurance Company, to be issued to her in her name (but without specifying her estate or insurable interest) on the above described premises, insuring the same from fire in the sum of $4,360, apportioned among the several buildings, in consideration of a premium of $26.16, paid by her.

On April 26th 1877, the buildings insured were destroyed by fire, and after some negotiation or dispute as to the amount for which the insurance company was liable, the company on May 19th 1877, paid Mrs. Louden in full "compromise settlement" the sum of $3,737.58, less a discount of $56.53.

At the time the policy was issued there was due on the mortgage about $3,250, debt and interest; at the time of settlement for the loss, there was due on the mortgage about $3,400; so the amount received by Mrs. Louden from the insurance company exceeded the amount due on the mortgage.

Soon afterwards Mrs. Louden erected upon the lot a brick building, the cost of which was variously estimated by the witnesses from $1,600 to $3,400.

Mrs. Louden died in 1880, when the guardian of the minor child took possession of the premises. Her husband, William G. Louden, having taken out letters of administration on her estate, brought this action on the mortgage August 20th 1880.

The defendants claimed that the insurable interest of Mrs. Louden, covered by her policy, was her *mortgage debt*, and that, as she received more than that amount from the insurance company, the debt was paid and the mortgage satisfied.

The plaintiff presented the following point, viz.: "That under all the evidence in this case the verdict should be for the plaintiffs, for the whole amount of the debt and interest of the mortgage for which the *scire facias* was issued." Refused.

The court charged the jury, *inter alia*, as follows: "Under the facts of this case, it seems to me that to determine the rights of the parties here is more a question of law than it is one of fact; it is more the duty of the court, therefore, to dispose of it than it will be your duty. The law applicable to this case is not settled beyond doubt by the authorities that have been cited here. The law relating to the rights of mortgagors and mortgagees in cases like this seems to be in considerable confusion, from the law cited before us; and, as I understand the cases cited in this State, the law in Pennsylvania differs from that in other States, notably in Maine and Massachusetts. But as we are administering the law in Pennsylvania we must respect the decisions of

[Louden v. Waddle.]

our own courts, and must endeavor to decide our cases so that we may be within the line of the judicial thought of this State.

"Before coming, however, to the question of the law as to mortgagors and mortgagees, I shall dispose of this question of rebuilding this property upon the lot.   It is clear that Mrs. Louden put a house back on this property voluntarily.  There was nothing that would require her to build a house there.   There was neither law nor equity that could be called upon to compel her to do any such thing, and we think that the value of this house that has been built is immaterial in this issue, for several reasons.   First, if Mrs. Louden, or those who represent her, is entitled to all this insurance money and all this mortgage money, she does not claim anything for the property that has been built. If, on the other hand, she held that money—received that money from the insurance company in trust for her son—or if in law she was bound to apply it to the mortgage, and the surplus was to be held in trust for the estate of Charles W. Sweeny, why then, if trust funds, she had no authority to use them for building the house without due authority of law, and none is shown.   And hence it is of no importance in this case, as we look at it, what the value of the buildings are that have been put upon this lot.

"When this policy of insurance was issued Mrs. Louden was the mortgagee of this estate to the extent of her mortgage, $2,613 and some cents, and as the widow of Mr. Sweeny she was entitled, he having died intestate, to one-third of the rents, issues and profits of that real estate during her life.   Now, in some States—Maine and Massachusetts—it is competent for the person who has a mortgage against real estate to take out a policy of insurance, and if the property burns down, the party holding the mortgage can recover all their insurance money, and then proceed with the mortgage and recover all the mortgage.   In this State we think that the law is different, and I believe that the cases cited here—the case of Smith against the Insurance Company, 5th Harris 253, to the Insurance Company against Updegraff, 9th Harris 513, indicate a different view as the law in this State.

"In this State I believe the law to be that where the mortgagee insures the property covered by his mortgage, if it is insured for the mortgage interest only, then he can recover the amount of money, but it must be applied to the satisfaction of the mortgage debt.   He may also insure the whole value of the property, and if he does he must apply so much of it as will pay the mortgage debt, and must account to the owner of the property for the surplus.   That I believe to be the law in this State; so that, applying it to this case, Mrs. Louden could insure the

whole of this property, and if she did insure the whole of it by this policy, then, if there was a loss, and she received a sum of money sufficient to satisfy this mortgage, and to compensate her for any loss she might sustain on her other insurable interests, she was bound to satisfy the mortgage to the extent of the funds. She could have insured her interest alone—she could have recited that fact—and in that event she would not have had to account for anything to the owner of the real estate. If the sum was sufficient when she received it she would be bound to apply it. . . . She received $3,681.52, between $200 and $300 more than the amount of the mortgage due at the time she so got the money; so that, in our view, whether this insurance was on the whole property or whether it was on her mortgage and dower interest is not of much importance, as the loss was amicably adjusted by a compromise for a sum sufficient to cover the mortgage interest and a sum equivalent to a fair valuation of her dower interest.

"I am therefore of the opinion that the point submitted by the plaintiff must be negatived, and I direct you to find a verdict for the defendants in this case."

Verdict, accordingly, for the defendants, and judgment thereon. The plaintiff took this writ, assigning for error the refusal of their point, and the instruction to the jury to find for the defendants.

*Henry C. Parsons*, for the plaintiff in error.—The insurance was effected by the mortgagee without the procurement or even the knowledge of the mortgagor, and the mortgagee paid the premium. In such case we contend it is the law of Pennsylvania, as well as of other states, that in case of loss or damage to the premises by fire, before the mortgage has been paid, the mortgagee may .recover from the insurance company on its policy, without any obligation to apply the insurance money so received in satisfaction of the mortgage debt; but on ·the contrary, the mortgagee may retain the insurance money and also recover from the mortgagor the full amount of the mortgage. This is so on principle as well as on authority. On principle— because there is no privity in fact or law, as to the contract of insurance, between the mortgagor and the mortgagee. The mortgagee pays the premium, and if there is no loss by fire, or if the mortgage is paid, he cannot call on the mortgagor to pay the premium, but he must lose it. *E converso*, the mortgagor cannot claim a benefit under the policy. The underwriters insure for the benefit of the *insured*, not for another, and the mortgagor, in case of loss, can no more claim the benefit of that contract against the mortgagee than he

[Louden *v.* Waddle.]

can against the insurance company. The insurance is wholly a collateral contract, with which the mortgagor has no concern. The two claims are distinct and independent. The mortgagee insures not his debt, but his interest in the property as security for the debt. There is no question here as to the mortgagee's insurable interest, for the company paid the insurance money by a compromise settlement. In this case the mortgagee had a right of dower in the premises, besides her lien as mortgagee, and she expended the insurance money in building another house on the lot; but apart from these facts a mortgagee insuring his debt, estate or security may recover the insurance, without prejudice to his claim against the mortgagor. Both mortgagor and mortgagee may insure the same property, and each may recover, on his own policy, to the amount of his interest; but neither can claim the benefit of a policy underwritten for the other. The contract of insurance is a mere personal indemnity against loss to the person with whom it is made; it is not incident to the estate so as to run with the title or be available by a stranger.

These principles are supported by the following authorities: Wood on Fire Insurance (ed. 1878) 863; May on Insurance 115, 547; Flanders on Fire Insurance 396; White *v.* Brown, 2 Cush. 417; King *v.* State Mut. Ins. Co., 7 Cush. 4; Suffolk Fire Ins. Co. *v.* Boyden, 9 Allen 126; Cushing *v.* Thompson, 34 Me. 499; Concord Ins. Co. *v.* Woodbury, 45 Me. 453; Excelsior Fire Ins. Co. *v.* Royal Fire Ins. Co., 55 N. Y. 343.

The court below thought that the cases of Insurance Co. *v.* Updegraff, 9 Harris 513, and Smith *v.* Columbia Ins. Co., 5 Harris 253, ruled the law otherwise in Pennsylvania; but in the former case the rights and liabilities of mortgagor and mortgagee did not arise; the action was by a vendor on a policy of insurance, and the company defended because the vendor, having sold the property, sustained no loss, and the vendee could not recover because he was not a party to the contract. In the other case there are *dicta* by GIBSON, C. J., which no doubt indicate an opinion that the insurance by a mortgagee is, *in effect*, an insurance of the debt, and that if he recovers from the insurers he cannot again recover on his mortgage. But this was aside from the case, which was one between the assured and the Insurance Company; and the *dicta* have been criticised in Wood on Fire Insurance 863, and in Excelsior Fire Ins. Co. *v.* Royal Fire Ins. Co., 55 N. Y. 343, as not sound. The precise question has never been decided in Pennsylvania, and this court should, if possible, decide it in harmony with all the authorities above cited.

[Louden *v.* Waddle.]

*R. P. Allen (J. A. Beeber* with him), for the defendants in error.—There must be a fallacy in the argument which leads to the conclusion that a mortgagee who insures the mortgaged premises may recover and retain both the insurance money and the mortgage debt. Insurance being a contract of indemnity, whatever be the description of the subject of the insurance, the real thing insured against is loss of the mortgagee's security. In case the mortgaged buildings are destroyed by fire, and the company pays the mortgagee the insurance money exceeding the mortgage debt, the company not only thereby fulfills its contract of indemnity, but it in equity extinguishes the mortgage. It is said as the mortgagor did not pay the premium, he cannot reap an advantage from the insurance policy, to which he was not a party; but the mortgagee's *insurable interest* was derived from the mortgagor by virtue of the mortgage—the mortgagor thus enabled the mortgagee to insure, and that benefit accruing to the mortgagee is sufficient consideration to support the mortgagagor's claim in equity to have the insurance money, less the premium, applied to his mortgage debt.

[SHARSWOOD, C. J.—Suppose the insurance company had exercised its option to rebuild, instead of paying the money?]

Then I admit the land would still be bound by the mortgage. That is not this case. It is true the mortgagee here rebuilt with a part of the insurance money; but she did this voluntarily *after* the mortgage was in equity satisfied, and she did it, presumably, to enhance her dower interest and out of affection for her minor son, to whom the realty belonged, subject to her right of dower; moreover, she occupied the premises. There are no equities here in favor of the mortgagee, for she is dead, and the real contest is between her second husband and the guardian of her minor son. To permit a double recovery in such cases would open the door to frauds on insurance companies by mortgagors and mortgagees, both of whom could insure, and both recover the full value of the buildings burnt, and the mortgagee could further recover from the mortgagor the full amount of the mortgage.

The principle we contend for has been maintained in the following authorities: Smith *v.* Columbia Ins. Co., 5 Harris 260; Insurance Co. *v.* Updegraff, 9 Harris 513; Thornton *v.* Insurance Co., 21 P. F. Smith 234; Reed *v.* Lukens, 8 Wright 202; Hill *v.* Insurance Co., 9 P. F. Smith 478; Flanders on Insurance, 400; notes to Lazerus *v.* Insurance Co., 2 Amer. Lead. Cas. (5th ed.) 825–835. It has been held in Pennsylvania that an insurance company paying the mortgagee is entitled to be subrogated to the mortgagee's rights as against the mortgagor; this is

[Louden *v.* Waddle.]

on the principle that, as between the mortgagor and the mortgagee, the debt is *paid*.

The decisions in other states relied on are based on the doctrine that there a mortgagee has an estate in the land, and are inapplicable in Pennsylvania, where the mortgagee has no estate, but only a lien on the land for the security of the debt.

Mr. Justice MERCUR delivered the opinion of the court, October 3d 1881.

A widow's dower is not merely a lien, but an estate in the land: Turner *v.* Hauser, 1 Watts 420 ; Deitz *v.* Beard, 2 Id. 171 ; Miller *v.* Leidig, 3 W. & S. 456 ; Thomas *v.* Simpson, 3 Barr 69 ; Zeigler's Appeal, 11 Casey 173 ; Schall's Appeal, 4 Wright 170 ; Gourley *v.* Kinley, 16 P. F. Smith 270.

While holding such an estate in the land of her deceased husband, and being in the possession thereof, Mrs. Louden, formerly Sweeny, obtained an insurance on the buildings thereon, in such form as if she had been the sole owner of the same. Although at the time she held this mortgage, now in contention, on the premises, yet no mention thereof is made in the application, or in the policy, nor in the proofs of loss. On the contrary, in her proofs of loss she declared " the property insured belonged to me for myself and son in trust."

Having an insurable estate in the property, and the form of the policy showing the insurance to be on the buildings and not on the debt secured by the mortgage, the burden of proving it to be on the debt rests on the party alleging it.

The insurance was not procured under any arrangement with the defendants, nor with their knowledge. She paid the whole premium. The houses were wholly destroyed. She compromised with the insurance company and received the money. Soon thereafter, with the money received, she erected a new house on the premises in place of those destroyed ; but, the evidence indicates, of less value than the former.

A careful examination of the whole evidence fails to show any declaration of Mrs. Louden that she understood the insurance to be of the mortgage. The amount of the risk taken on the buildings was much greater than the sum due on the mortgage. While the fact that she rebuilt with a part of the money received could not change the previously existing rights of the parties, yet it is persuasive evidence that she understood the estate, and not the debt, to have been insured.

If the case was now between her and the insurance company, her right to recover more than the value of her estate in the buildings might be questioned ; but these defendants were

[Maynard *v.* Sixth National Bank of Philadelphia.]

strangers to that contract, and cannot set up any excess of valuation then, to increase their rights now.

Inasmuch as the money which she received from the insurance company was equal to the sum due on the mortgage, the learned judge thought the latter was thereby extinguished, and in this scire facias thereon directed the jury to return a verdict in favor of the defendants. In this there was error.

The defendants claim that the insurance by a mortgagee of an interest in the premises intended to be for the amount of his debt, is an insurance of his debt, and in case of a loss, the receipt by him of that amount from the insurance company, operates as a satisfaction of the mortgage. To support this view they cite Smith *v.* Ins. Co., 5 Harris 253 ; Ins. Co. *v.* Updegraff, 9 Id. 513 ; Reed *v.* Lukens, 8 Wright 200.

It may well be doubted whether these cases sustain that view on the facts assumed. Whether or not they do, we now indicate no opinion. The facts in this case do not admit of the application of such a rule of law. The effect claimed from the mere insurance by a mortgagee for the amount of his debt is in conflict with elementary authority and many well considered cases, among which may be cited : Wood on Fire Ins. 863 ; Cushing *v.* Thompson, 34 Maine 499 ; Concord Ins. Co. *v.* Woodbury, 45 Id. 453 ; White *v.* Brown, 2 Cush. 417 ; King *v.* State Mu. Ins. Co., 7 Id. 4 ; Suffolk Ins. Co. *v.* Boyden, 9 Allen 126 ; Excelsior Fire Ins. Co. *v.* Royal Ins. Co., 55 N. Y. 343 ; Hancox *v.* Fishing Ins. Co., 3 Sum. 132.

We, however, will not rule the law on a statement of facts not before us. On the case as proved the assignments of error are sustained.

Judgment reversed and a *venire facias de novo* awarded.