# Assigned Estate of William Zehring. Appeal of Elizabeth Mease.

*Insurance—Insurable interest of widow in her dower estate.*

A widow's dower being an estate in land the widow has an insurable interest therein.

*Actions—Parties—Insurance of dower interest.*

A widow, having an insurable interest in land sold subject to her dower, can in her own name maintain an action on a policy of insurance taken out for her protection, although such policy was nominally issued to the terre-tenant as the owner of the legal title, and payment to her by the company is a good payment and a protection to the company.

*Insurance of dower interest—Effect of as to arrears due.*

A widow having effected insurance to protect her dower interest a payment of such insurance is not in relief o[f] arrears of dower due her by the terre-tenant prior to the loss, the terre-tenant having no interest in the policy.

Argued March 9, 1897. Appeal, No. 37, March T., 1897, by Elizabeth Mease, from decree of C. P. Lebanon Co., June T., 1895, No. 473, dismissing exceptions to the report of auditor and confirming said auditor's report absolutely. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Reversed.

Exceptions to auditor's report. Before EHRGOOD, P. J.

The facts sufficiently appear in the opinion of the Superior Court.

*Errors assigned* were (1) in not holding that the appellant is entitled to hold the proceeds of the insurance policy during her lifetime, and apply principal and interest to make good any deficiencies in the annual income of her dower interest.

(2) In not holding that Elizabeth Mease should have been paid $360 out of the estate of William Zehring for two years' interest on her dower.

(3) In not holding that the evidence submitted in behalf of Elizabeth Mease before the auditor, was sufficient to reform the insurance policy in this case, by striking out the name of Wm. Zehring and inserting that of Elizabeth Mease as the party insured.

(4) In refusing to hold that Elizabeth Mease was entitled to receive the money due for any loss under said policy, without being obliged to account therefor to William Zehring's assignee or judgment creditors.

(5) In not holding that Zehring had forfeited all his rights under the policy.

(6) In not holding that the payment to Elizabeth Mease was voluntary on the part of the insurance company, and that the appellee had no right to inquire into it.

*George B. Woomer*, for appellant.—That an insurance policy can be reformed, where by mistake, the terms of the policy do not contain the form of the agreement, is decided in Thompson v. Insurance Company, 136 U. S. 287.

The intention of the parties to a contract of insurance governs the future use of it: Steele v. Ins. Company, 17 Pa. 290.

Where a mortgagee, at his own expense and without any agreement or understanding with the mortgagor, obtains insurance upon his interest as mortgagee and collects the money from the insurer after a loss, he is not bound to account for it to the mortgagor: Mf'g Co. v. Ins. Co., 135 Mass. 503 ; Ins. Co. v. Boyden, 91 Mass. 124. Woodbury Savings Bank v. Insurance Company, 31 Conn. 517.

The evidence does not show that the company had any notice of the assignment, but even if it had, such notice was insufficient as long as the written consent of the company was not given as prescribed in the policy: Insurance Company v. Hebard & Forsmen, 95 Pa. 45.

*J. G. Adams*, with him *Capp & Schock*, for appellee.—Parties to a written contract are not permitted to testify their unexpressed intent, motive or belief at the time they signed the contract: Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Spencer v. Colt, 89 Pa. 314.

An assignment in bankruptcy does not avoid a policy: Ins. Co. v. Neel, 6 W. N. C. 233.

An orphans' court sale, before a confirmation, does not avoid a policy: Ins. Co. v. Graybill, 74 Pa. 17; Hill v. Assurance Co., 165 Pa. 298.

An assignee for the benefit of creditors is not a purchaser, but the mere agent of the debtor, who is in one sense still the owner of the fee: Fulton's Est., 51 Pa. 213; Dohner's Appeal, 1 Pa. 101.

OPINION BY WILLARD, J., April 12, 1897:

On the 4th of April, 1883, William Zehring received a deed for a farm in East Hanover township, Lebanon county, Pa., from J. H. Mease, executor of Daniel Mease, deceased, in which Elizabeth Mease, the widow of Daniel Mease, had a dower interest amounting to the sum of $3,000, upon which she was to receive the sum of $180 interest per annum during her life, and at her death the principal was to be paid to the legal heirs and representatives of Daniel Mease, deceased. Zehring purchased the farm subject to the dower interest, agreeing to pay the $180 annually during the life of Mrs. Mease, and the principal to the heirs at her death, as provided in the will. Zehring paid the annual interest up to the first day of April, 1894, and then stopped payment. On May 7, 1895, Mrs. Mease, through her son, Dr. J. H. Mease, applied to the City Mutual Fire Insurance Company of Lebanon, Pennsylvania, for a policy of insurance in the sum of $1,000, to protect her dower interest. The negotiation for the policy was between Mr. S. H. Bentz, secretary of the company, and Dr. Mease acting for his mother. It was thought by Bentz that as the legal title to the farm was in Zehring, he would have to make the application, and at the solicitation of Dr. Mease, Zehring accompanied him to the insurance office and signed the application, with a distinct understanding that he (Zehring) was not to pay the premium, but the premiums and all assessments would be paid by Mrs. Mease.

The policy was issued nominally to William Zehring as the assured, which contained the following clause: "Loss, if any, payable to Elizabeth Mease, widow, as her dower interest may appear." This policy was delivered to Dr. Mease who paid the premium and policy fee. Mrs. Mease subsequently paid an assessment on the policy on notice to her from the insurance company. On the 21st of May, 1895, William Zehring, joined by his wife made an assignment to Thomas H. Capp in trust for the benefit of creditors.

On the 19th of August, 1895, the barn and several of the outbuildings were destroyed by fire, the insurance thereon being the sum of $500. After the fire, proofs of loss were made out which Zehring signed and swore to after consultation with his counsel. The property was subsequently sold by the assignee to C. Capp for $1,147.63 subject to Mrs. Mease's dower interest. After the fire the insurance was claimed by Mrs. Mease and T. H. Capp the assignee of William Zehring, the money being paid by the insurance company to Mrs. Mease, the company first requiring her to give a bond of indemnity against all claims by the assignee and other persons. A suit was brought and is now pending in Lebanon county wherein Thomas H. Capp, assignee, is plaintiff, and the City Mutual Fire Insurance Company is defendant, for the $500 insurance paid to Mrs. Mease. Upon the filing of the assignee's account, Mrs. Mease filed exceptions thereto on the ground that the accountant had applied the moneys in payment of judgments posterior to her claim of $360, which was for two years' interest on her dower from April 1, 1894, to April 1, 1896. The account was referred to C. H. Killinger, Esq., as an auditor to make distribution. The auditor disallowed the claim of Mrs. Mease for the reason that she had already received a larger amount from the insurance company. Exceptions were filed to the report of the auditor, which exceptions were overruled by the court in an opinion filed December 9, 1896, and an appeal taken to this court.

The dower interest of the appellant in the farm that belonged to her husband in his lifetime was settled upon her in his last will and testament for her support. It was valued at $3,000, with a proviso that the interest on that sum, to wit $180 per annum, should be paid to her annually on the 1st day of April,

and after her death the principal sum to go to the heirs at law of her husband. The annual interest for two years is withheld from her by the report of the auditor and the decree of the court below for the reason that she had received $500 upon an insurance policy placed by her upon certain buildings upon the farm and destroyed by fire during the life of the policy. Was the court below right in thus withholding from this appellant her annuity, is the question for our consideration. To properly determine this question it is necessary to ascertain in the first place upon what facts the auditor and court based their legal conclusions. The specific findings of fact by the auditor, numbered two, three and four, are here inserted as found by him :

" 2. In the spring of 1895, Dr. J. H. Mease, executor of the estate of Daniel Mease, the grantor, acting on behalf of his mother, Elizabeth Mease, widow of the said Daniel Mease, the person named in said charge, thinking it desirable to protect the interest of his mother by insurance upon the buildings of said farm, approached S. H. Bentz, secretary of the City Mutual Fire Insurance Company to procure such insurance. In the language of the secretary—'Dr. Mease was uncertain whether he would sign this application for his mother or whether Mr. Zehring should sign it, and I thought Mr. Zehring should sign it.' All dealings in regard to this application and policy except as hereinafter stated, were between the company's secretary, S. H. Bentz, and Dr. Mease. At the time of the application Dr. Mease informed the secretary that the company should look to him for the payments of assessments.

" 3. The application was drawn from information furnished by Dr. Mease. Dr. Mease saw Zehring and said to him, ' we want to take out a policy to protect my mother's interest. Of course we don't expect you to pay this but it seems that it is necessary for you to sign the application, for you have the legal title, so the insurance agent says.' Zehring said ' all right.' They crossed the street to the secretary's office and Zehring signed the application May 4, 1895. The application contains, inter alia, the following clause, ' For value received and in consideration of the policy of insurance to be issued by the City Mutual Fire Insurance Company, of Lebanon, Pa., upon the approval of my application for insurance in said company of this date, I propose to pay the company such sum or sums of

money and at such time or times as the board of directors
of said company may for the purpose of paying losses by fire
and the necessary expenses of said company require, payable
within thirty days after notice.'

"4. The company issued its policy of insurance May 7, 1895.
It was delivered to Dr. Mease who paid the premium and policy
fee of $3.00. Zehring was never asked to pay and never paid
anything. The policy insured William Zehring and continued,
inter alia, 'In consideration of the further stipulation (inter
alia) that the insured promises to pay the company such sum
or sums of money as may be assessed by the board of directors
from time to time for the payment of losses and the necessary
expenses of the company may require.' It also contains the
following stipulations : ' To be void . . . . if any change other
than by death of an insured takes place in the interest, title or
possession of the subject of insurance . . . . whether by legal
process or judgment or by voluntary act of the insured, or
otherwise.' Also, the following: 'If with the consent of this
company an interest under this policy shall exist in favor of a
mortgagee or of any person or corporation for an interest in the
subject of insurance, other than the interest of the insured as
described herein, the conditions hereinbefore contained shall
apply in the manner expressed in such provisions and condition
of insurance relating to such interests as shall be written upon,
attached or appended hereto.' Dr. Mease agreed to the issuing
of the policy in this form."

In addition to the above findings an extract from the uncon-
tradicted testimony of Mr. Bentz, the secretary of the insurance
company, is here inserted as throwing light upon the transaction :
" In addition to other reasons for refusing Mr. Zehring insurance,
I knew he was involved, and also that he had enemies, and there-
fore considered the risk undesirable ; I knew Mr. Zehring was
financially embarrassed for a year previously to his assignment ;
as a matter of fact I considered Elizabeth Mease the person
really insured, to whom we looked for payments ; at the time,
Dr. Mease did not know whether he could get Zehring to sign
the application."

From the above facts we are forced to the conclusion that the
appellant was the real party insured, and that William Zehring
was only a nominal party to the contract. The printed and oral

arguments of counsel were directed to what appeared to be the vital question in the case, to wit, whether there was sufficient evidence to justify the reformation of the contract of insurance, and to warrant a chancellor in striking the name of William Zehring therefrom.

As we view this case and the well settled principles of law governing it, it is unnecessary to discuss this question. The contract required no reformation in order to afford entire protection to the party entitled thereto.

The first question is, what was the policy issued for? To this there can be but one answer under the facts. It was for the protection of the dower interest of this appellant.

The second question is, had she an insurable interest in the property insured? That question is answered by Mr. Justice MERCUR in Louden v. Waddle, 98 Pa. 242, where it is said: "A widow's dower is not merely a lien, but an estate in the land."

The third question is, could the appellant sustain an action upon this contract in her own name? If she could, then the payment to her by the company was a good payment and a pro tection to the company.

There is no principle better established than that the person from whom the consideration moves has a direct right of action against the party receiving the consideration and stipulating for indemnity in the contract expressing the consideration. The appellant paid the consideration, the indemnity was payable to her as her interest might appear, and that interest far exceeded the amount of indemnity stipulated and paid for and actually received by her. The right of this appellant to maintain an action in her own name is also supported by most respectable authority. In Biddle on Insurance it is said, "Where the payee, himself alone, as, for example, a mortgagee, in the name of a mortgagor, makes the contract with the insurer, though in another's name, or becomes, to a certain extent, a contracting party, then the courts seem unanimously to permit a suit in the name of the payee." In Ostrander on the Law on Fire Insurance at paragraph 385 it is said: "The rule appears to be, however, that suit should be in the name of the assured, except where the property has been sold and the policy assigned by the consent of the company, or where the insurance is taken

with the understanding of the parties that the assignee, payee or mortgagee, is the real party insured, in which case, of course he will be the proper person to sue."

It is said, also, by the same author at paragraph 390, "when the owner of the property is only nominally the insured, the policy being issued in his name, but procured and paid for by the mortgagee, and containing a clause directing, without qualification or restriction, that the loss be paid to the latter, he may recover in a suit brought in his own name." In Hadley v. New Hampshire Fire Insurance Company, 55 N. H. 110, "the plaintiff, interested as mortgagee obtained the policy in suit in the name of the general owner, with his consent paying the premium himself; and the policy being made payable to him in case of loss to the extent of his mortgage interest, the whole amount of insurance being less than his mortgage debt, it was held that he might maintain an action in his own name to recover the whole amount." In Aurora Fire and Marine Insurance Company v. Hopkins Manufacturing Company, (Supreme Court of Michigan) 11 Ins. Law Journal, 341, plaintiffs had a mortgage upon real estate to secure the payment of a certain bond, which among other conditions, provided that the building should be kept insured. The mortgagor having failed to so insure, the mortgagees insured their interest, the policy issued being, in form, to the owner, but payable to the mortgagees, as their interest should appear. The consideration passed directly from the mortgagees to the insurance company. The policy was delivered to the mortgagees and covered no more than their interest. Held, that an action thereon was properly brought in the name of the mortgagees. To the same effect is Chamberlain v. New Hampshire Fire Ins. Co., 55 N. H. 249, West Chester Fire Ins. Co. v. Foster, 90 Ill. 121, Meriden Savings Bank v. Home Mutual Fire Ins. Co., 50 Conn. 396, Maxcy v. New Hampshire Fire Ins. Co. of Manchester (Supreme Court of Minnesota), 22 Ins. Law Journal, 830, and Palmer Savings Bank v. The Insurance Company of North America, 166 Mass 189.

The fourth question is, can the third finding of law by the auditor that " the payment of the insurance to Elizabeth Mease must be treated as a satisfaction of the $360 interest on the dower charged in her favor," be sustained on principle or

authority? The assignor of the property had no real interest in the policy. It was merely nominal, and if he had none, Capp, his assignee, had none. On what principle then can this money be appropriated to the payment of appellant's annuity? Neither Zehring nor his assignee paid or contributed one dollar of the consideration for the indemnity, nor had they any interest in the dower right protected by the contract. It therefore follows that the auditor's conclusion of law and the decree of the court, which in effect appropriated $360 of the appellant's insurance money to the payment of her annuity, was erroneous. The appellant attempted to protect her entire dower interest and in this she stood on at least as secure ground as though she had been a mortgagee holding a mortgage of $3,000, and had procured and paid for herself an insurance of $1,000 on the mortgaged premises in the name of Zehring with his consent. Under such circumstances, in case of loss she could have recovered the insurance in her own name without applying the money to the payment of the mortgage in the absence of an agreement to that effect between the mortgagor and mortgagee, nor could the mortgagor compel its application for that purpose. In Wood on Fire Insurance at page 863, it is said, " the right of a mortgagee to insure the premises to the amount of his debt, is the lien given upon the property by the conveyance, as security for the payment of the debt, yet the insurance is in no sense the insurance of the debt, but of the mortgagee's interest in the property as security for the debt. Except where the insurance is effected by the mortgagor, or under an arrangement with him, or he pays for the same, or agrees to do so, payment of a loss under the policy does not operate as a payment of the debt, or relieve the mortgaged premises from the lien, or the mortgagor from liability for the whole sum payable by the terms of the contract, nor does it estop the mortgagee from recovering both the insurance and the debt."

In an insurance by the mortgagee for his own benefit it has been held that payment of the insurance money does not extinguish the debt as the mortgagor has no interest in the policy: Biddle on Fire Insurance, par. 255. The rule is stated in May on Insurance, par. 456, as follows: " It may be stated as a general rule, that no one, except the assured, or his assigns after loss, can claim either from the insurers or from the party to

whom the loss has been paid, any part of the proceeds of a policy, unless by express agreement, or unless the policy covered property in which the claimant had an interest, and was intended or effected in part or in whole for his benefit and at his expense." In Louden v. Waddle, supra, it was said by Mr. Justice MERCUR, "the defendants claim that the insurance by a mortgagee of the interest in the premises intended to be for the amount of his debt, is an insurance of his debt, and in case of loss, receipt by him of that amount from the insurance company operates as a satisfaction of the mortgage. To support this view they cite Smith v. Insurance Company, 17 Pa. 253; Insurance Company v. Updegraff, 21 Pa. 513; Reed v. Lukens, 44 Pa. 200. It may well be doubted whether these cases sustain the view on the facts assumed . . . . The effect claimed from the mere insurance by a mortgagee for the amount of his debt is in conflict with elementary authority and many well considered cases."

In Louden v. Waddle the argument of the appellee was based upon the dictum in Smith v. Insurance Company, 17 Pa. 253, that an insurance by a mortgagee was but the insurance of a debt, a mortgage being but a lien upon and not an interest in land. While it has been held that an owner of a judgment has no insurable interest in the land upon which the judgment is a lien, the rule is otherwise as to the insurable interest of a mortgagee. Both mortgagors and mortgagees have insurable interests. As was said in Palmer's Savings Bank v. Insurance Company of North America, supra, "Each can insure for his own benefit, the mortgagor for the full value of the property, and the mortgagee for the full value of his interest in the property, and neither can avail himself in any way of the money recovered from insurance by the other, unless there is some contract making it so available."

In this farm the appellant had an estate ample to support her contract. Under its terms she received the sum of $500, and neither William Zehring nor his assignee or creditors can claim the money thus paid to her, nor compel its application in payment of her annuity, because there was no agreement that it should be so paid or applied, nor did William Zehring or his assignee have any interest in her dower estate, nor is there any evidence in this case that the policy was effected, in part or in whole, for the benefit of Zehring or at his expense.

The sum of $360 arrearages of dower due and unpaid to the appellant from April 1, 1894, to April 1, 1896, should have been distributed and paid to her out of moneys derived from the sale of the farm to C. Capp, in preference to any subsequent lien thereon.

The decree of the court below of December 9th, 1896, is reversed at the cost of the appellee, and the record remitted to the court below with directions that distribution be made in accordance with this opinion.